IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GUY ALLAN MALROIT, | ) | CASE NO. 1:02 CV 1041 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BAGLEY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

## I.  Introduction

This case involves a petition for writ of habeas corpus filed by Guy Allan Malroit. The State of Ohio has custody of Malroit at the Marion Correctional Institution in Marion, Ohio, where Christine M. Money currently serves as Warden.[1]

Malroit claims that his conviction violated various of his federal constitutional rights. His original petition asserts four grounds for relief.[2]

Money argues that Malroit procedurally defaulted on one ground for relief and, with respect to the other grounds, the state court decision was not contrary to, or an unreasonable application of, clearly established federal law.  Money submits, therefore, that the petition for habeas corpus relief must fail.[3]

---

[1] The identity of the Warden herein differs from the caption of this case as the result of a clarification contained in respondent's return of writ, ECF # 30.

[2] ECF # 1.

[3] ECF # 30.

For the reasons that follow, this Court finds that, even if Malroit's argument that evidence was improperly admitted at trial is not barred by a procedural default, the claimed error would not constitute a violation of his federal Constitutional rights sufficient to issue the writ.  Moreover, the Court concludes that the balance of his stated grounds for relief do not involve state actions that are either contrary to or unreasonable applications of clearly established federal law.  Therefore, the Magistrate Judge recommends dismissal of Malroit's petition.

## II.  Background

### A.    Facts

The Ninth District Court of Appeals for Medina County, Ohio, set forth in its decision the following facts relevant to the habeas petition:[4]

> In 1995, Malroit lived in Michigan. In anticipation of moving to Ohio he spent the weekends in Ohio looking for work. While in Ohio he visited with Dale Smith ("Dale") and his family. Dale and Malroit served together in the Navy and were close friends. Malroit was familiar with the entire Smith family including Dale's wife, Kathy, and their four children Crystal, Bryan, Angel and Sarah.  [FN3]
>
> > FN3. Crystal is Kathy's daughter from a previous relationship. Bryan is Dale's son from a previous marriage, however Kathy adopted Bryan. Angel and Sarah are Kathy and Dale's biological children.
>
> On August 11, 1995, Malroit baby-sat for the Smith children. The next day, Bryan told his mother that Malroit had "check[ed] to see if [Bryan] could have babies." Bryan said that Malroit asked to see Bryan's homework and took Bryan up to his bedroom. Once in the bedroom, Malroit locked the door, told

---

[4] A presumption of correctness attaches to factual findings of state courts.  *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003).

Bryan to remove his clothes, tied Bryan's hands behind his back and blindfolded him. Bryan described Malroit put something "soft and squishy" in his mouth and something "in his butt and it hurt."

After contacting the police, the Smiths' took Bryan to the Children's Hospital Medical Center for an examination. There was no physical evidence of sexual abuse however the doctor did indicate a finding of laxity in the muscle tone around Bryan's anus. Within a week, Sandra May ("May") an intake investigator from the Medina County Department of Human Services, met and interviewed Bryan at the family's home. Upon May's recommendation Bryan began treatment with Dr. Michael Petrasek ("Dr. Petrasek"), a psychologist.[5]

**B.    Proceedings in the state court**

The grand jury indicted Malroit for felonious sexual penetration, kidnaping, and gross sexual imposition.[6]  Based on the evidence introduced at trial, the jury found Malroit guilty of felonious sexual penetration and kidnaping but not guilty of gross sexual imposition.[7]  The trial judge sentenced him to life imprisonment for felonious sexual penetration and 8 to 25 years imprisonment for kidnaping, the sentences to run consecutively.[8]  The trial court also adjudicated Malroit a sexual predator.[9]

_____

[5] ECF # 32 at 277-78; *State v. Malroit*, No. 3034-M, 2000 WL 1675046, at *1 (Ohio Ct. App. Nov. 8, 2000).  For the convenience of the District Judge, a copy of the Westlaw version of this decision is being attached as an appendix.

[6] *Malroit*, 2000 WL 1675046, at *1.

[7] *Id.*

[8] ECF # 32 at 64-65.

[9] *Id.*

-3-

Malroit appealed to the Ninth District Court of Appeals, raising seven assignments of error.[10]  The appellate court overruled all assignments of error and affirmed Malroit's conviction and sentence.[11]

Malroit then filed a notice of appeal and memorandum in support of jurisdiction to the Supreme Court of Ohio, raising six propositions of law.[12]  The Supreme Court declined jurisdiction for want of any substantial constitutional question.[13]

After Malroit had filed his federal habeas petition *pro se,* he filed a motion to reopen his direct appeal in the Ninth District Court of Appeals, offering five additional assignments of error.[14]  The court of appeals ruled that Malroit had not shown adequate cause for failing to timely file the motion to reopen.[15]  He appealed the denial to the Ohio Supreme Court, which dismissed the appeal on jurisdictional grounds.[16]

## C.    Federal habeas claims and proceedings

Malroit filed a petition for writ of habeas corpus in this Court, raising four grounds for relief:

---

[10] *Id.* at 67-68.

[11] *Malroit*, 2000 WL 1675046, at *10.

[12] ECF # 32 at 298-99.

[13] *Id.* at 353.

[14] ECF # 36 at 3-4.

[15] *Id.* at 3.

[16] *Id.* at 3-4.

Ground 1: The defense was denied a rape defendant's discovery request for a psychological examination of a ten year old alleged victim and for copies of his medical and psychological records of examination, where the accusation was three and one-half years old and uncorroborated by any witness, medical or physical evidence.

Ground 2: The trial court refused to permit Petitioner's expert phychologist [sic] to testify to research, experiments and related professional experiences.  It is was [sic] an unreasonable restriction upon the testimony of the defense expert.

Ground 3: The trial court permitted an emergency room physician to testify that in fifty persent [sic] (50%) of the children he had examined, wherein sexual abuse is suspected, there are no physical findings even though the perpetrator had admitted his physical abuse of the child. [sic] (b) the trial court permitted the state's expert phsychologist [sic] to say "What this child said to me was presented in a credible way". [sic] The court permitted an impermissible comment upon the credibility of the alleged victim.

Ground 4: Petitioner's convictions and sentences for felonious sexual penetration, O.R.C. § 2907.12 and kidnapping O.R.C. § 2905.01(A)(2) violate the United States Constitution prohibition against double jeopardy, and in clear violaiton [sic] of O.R.C. § 2941.25.[17]

After Malroit filed the motion to reopen his direct appeal in the state appellate court, he moved to stay the federal habeas proceedings pending exhaustion of state court remedies and to amend the federal habeas petition to include the claims asserted in his motion to reopen.[18]  After the state appeals court denied his motion to reopen, and the Ohio Supreme Court dismissed his appeal, Malroit moved to dismiss his motion to stay and renewed his

---

[17] ECF # 36, quoting from the petition, ECF # 1 at 4-5.

[18] ECF # 36 at 3.

request to amend his petition to add the new claims asserted in the motion to reopen the direct appeal.[19]

The Magistrate Judge issued a report and recommendation recommending the granting of the motion to amend the petition but the dismissal of the new claims asserted therein as procedurally defaulted.[20]  District Judge Lesley Wells adopted the Magistrate Judge's partial report and recommendation and has returned the matter to the Magistrate Judge for consideration of the grounds for relief set out in the original petition.[21]

### III.   Analysis

**A.    Review of the merits of Malroit's asserted grounds for relief**

***1.    Standard of review***

The Antiterrorism and Effective Death Penalty Act of 1996[22] ("AEDPA") increased the deference that federal courts must give to the decisions of state courts in habeas corpus cases.  That Act's provisions apply to all habeas corpus petitions brought after its effective date, April 24, 1996.[23]  The AEDPA, therefore, applies to Malroit's petition, which he filed on June 3, 2002.

---

[19] *Id.* at 4.

[20] ECF # 27.

[21] ECF # 36.

[22] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[23] *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

The AEDPA amended the standard of review in 28 U.S.C. § 2254(d) to prohibit habeas corpus relief unless the decision of the state court either diverges from federal law as determined by the Supreme Court of the United States **or** rests on an unreasonable determination of the facts from the evidence of record:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court provided guidance on the application of this standard in *Williams v. Taylor*.[24]  If the petitioner challenges the state court's application of the law, the inquiry under § 2254(d)(1) begins with consideration of whether clearly established Federal law, as determined by the Supreme Court, controls the issue presented by the habeas corpus petition. This depends on the existence of a holding of the Supreme Court, as opposed to dicta, controlling the issue at the time of the relevant state-court decision.[25]  If a controlling holding does exist, the analysis continues.  If no such holding exists, then the court must deny the petition.

---

[24] *Williams v. Taylor*, 529 U.S. 362 (2000).

[25] *Id.* at 412.

Under the "contrary to" clause in § 2254(d)(1), the writ will issue if the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than the Supreme Court on a set of materially indistinguishable facts.[26]  Justice O'Connor in the majority opinion explained the proper analysis under the "contrary to" prong of subsection (d)(1) in the following terms:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. ***  A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.[27]

Where the state court correctly identified the controlling Supreme Court authority but had to apply it to facts materially different from those faced by the Court in establishing the controlling authority, the "unreasonable application" clause of § 2254(d)(1) comes into play.[28]  Under the "unreasonable application" clause, the federal habeas court must grant the writ if the state court adopted the correct governing legal principle from the decisions of the Supreme Court but unreasonably applied that principle to the facts of the petitioner's case.[29]  Whether the state court unreasonably applied the principle turns on whether the state court's application of clearly established federal law was objectively unreasonable.[30]

---

[26] *Id.*

[27] *Id.* at 406.

[28] *Id.* at 407, 408.

[29] *Id.* at 413.

[30] *Id.* at 409.

Because the Supreme Court of Ohio declined jurisdiction and did not reach the merits, this Court's analysis must focus on the decision of the state court of appeals.[31]

**2.**   ***Ground 1 – Malroit was denied due process and a fundamentally fair trial when the trial court denied the defense request for a psychological evaluation of the alleged victim.***

In its review of this claim, the state appeals court initially observed that the decision to deny discovery is a matter within the broad discretion of the trial judge.[32] Such decisions will not be disturbed on appeal except upon a showing of abuse of discretion, requiring evidence of more than mere "error of law or judgment" but proof that the trial court was "unreasonable, arbitrary or unconscionable."[33] On this basis, the appellate court denied the assignment of error concerning the request for a defense-conducted examination of the victim.

Malroit claims here that the state appeals court erroneously employed the abuse of discretion standard and should have instead evaluated this asserted error by determining if it was harmless beyond a reasonable doubt.[34] In this regard, petitioner argues that the state court applied a rule that is "contrary to" controlling federal law, and this Court should issue the writ after determining that the error had a "substantial and injurious effect" on the trial.[35]

---

[31] *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

[32] *Malroit*, 2000 WL 1675046, at **2.

[33] *Id*.

[34] ECF # 34 at 10.

[35] *Id*., quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Alternatively, Malroit contends that the state appellate court unreasonably applied clearly established federal law by not "extend[ing]" the right of a criminal defendant to "meet the government's case against him" to include requiring a separate defense psychological examination of the child victim.[36]

A federal habeas court must, pursuant to *Estelle v. McGuire*,[37] consider whether any alleged violations of state evidentiary law rendered the whole trial fundamentally unfair to support granting the writ.  Under the rule promulgated in *Brecht v. Abrahamson*,[38] and cited by Malroit, the error must be shown to have "had a substantial and injurious effect or influence" on the verdict before habeas relief may be granted.[39] That standard has been recently construed to require a party seeking to establish prejudice from an allegedly erroneous trial ruling to demonstrate a "reasonable probability that, but for [the error claimed], the result of the proceeding would have been different."[40]

Here, the state appeals court found, without explicitly employing the *Brecht* analysis, that there was no "substantial and injurious effect" on the verdict from Malroit's claim of error regarding the lack of a defense-conducted psychological examination of the victim:

"The record in the present case indicates that Bryan [the victim] testified directly as to the sexual conduct at issue.  Although Malroit did not have an

---

[36] *Id*. at 13.

[37] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

[38] *Brecht,* 507 U.S. 619.

[39] *Id.* at 623.

[40] *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (citation omitted).

independent examination of the victim, the defense had ample opportunity to cross-examine Bryan's psychologist, Dr. Petrasek, on his evaluation of Bryan and whether sexual conduct had occurred. . . . Malroit failed to demonstrate that . . . a psychological examination of Bryan . . . would produce potentially exculpatory evidence that could not be obtained by other reasonable means."[41]

Moreover, as also noted by the state appellate court, "Malroit was free to cross-examine the medical doctor, social worker, psychologist and chief police inspector as to the protocol each used with Bryan."[42]

Malroit's argument here – that he was denied any "meaningful adversarial testing"[43] of the prosecution's case because he had no defense-conducted psychological test of the victim – is not supported by the record cited by the appeals court. In fact, Malroit concedes that he could have, through cross-examination of Bryan's psychologist, impeached his testimony by "reveal[ing] his bias."[44] The problem, contends Malroit, is that he could not, by that means, establish "the problems with the State's interviews of Bryan and how it may have led him to falsely accuse Malroit."[45]

But the record demonstrates that Malroit had the means to make those latter points, as the appeals court determined, by cross-examination of the "medical doctor, social worker

---

[41] *Malroit*, 2000 WL 1675046, at **2, 3.

[42] *Id.* at *3.

[43] ECF # 34 at 6.

[44] *Id.*

[45] *Id.*

. . . and police inspector."[46] Malroit also had the opportunity to cross-examine the victim directly concerning how the interviews were conducted or to explore alternate motives. Malroit chose not to cross-examine the victim at all.

"Whether the exclusion of evidence is of a constitutional dimension depends on the trial court's reason for the exclusion and the effect of the exclusion."[47]  As previously noted, the effect must be that, but for the exclusion of the evidence, there would be a "reasonable probability" that the result would have been different.[48]

As detailed by the state appeals court, the trial judge considered whether Malroit had established that a second psychological examination of the victim would likely produce evidence that "is potentially exculpatory and cannot be obtained by other reasonable means."[49]  The appeals court concluded that Malroit at trial had sufficient opportunity to do by other means what he now claims was denied him.  Through cross-examination of the psychologist, the medical doctor, the social worker, the police inspector and, above all, the victim himself, Malroit had multiple means to present his theories concerning possible bias or alternative motive to the jury.

Accordingly, the lack here of a defense-sponsored examination of the victim, in and of itself, has not been shown to have a "substantial and injurious effect" on the verdict,

---

[46] *Malroit,* 2000 WL 1675046, at * 3.

[47] *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005).

[48] *Dominguez Benitez*, 542 U.S. at 82.

[49] *Malroit*, 2000 WL 1675046, at *2 (citation omitted).

-12-

inasmuch as Malroit has not established that there was reasonable probability that the result would have been different, and so affords Malroit no basis for habeas relief.

This conclusion comports with a body of federal precedent denying habeas relief for alleged violation of due process where the state trial court denied the defense a psychological evaluation of the minor victim, particularly where the victim and/or the state's psychological evaluator of the victim were available for cross-examination at trial.[50]

3.    *Ground 2 – The trial court's restriction on the testimony of the defense expert deprived Malroit of a fundamentally fair trial.*

As with the immediately preceding grounds, Malroit contends that the trial court's evidentiary restrictions on the testimony of his expert deprived him of due process and a fair trial.[51]

The Ohio appellate court, as with the earlier ground, again reviewed the details of the specific objections to the testimony of Malroit's expert, Dr. Campbell, under an abuse of discretion rubric.  It concluded that the trial court had not abused its discretion in sustaining the state's objections to Dr. Campbell's testimony.[52] The court found:

> "Malroit asserts that the trial court did not allow Dr. Campbell to testify about: experiments regarding interview bias, research demonstrating the dangers of unaided recall, personal experiences with interviewing protocol for a suspected sexually abused child and the possibility of a false positive

---

[50] *E.g.*, *Parker v. Scott*, 394 F.3d 1302, 1323 (10th Cir. 2005); *Keeney v. McDaniel*, 67 F. App'x 424, 426 (9th Cir. 2003); *Gilpin v. McCormick*, 921 F.2d 928, 931-32 (9th Cir. 1990); *Sullivan v. Minnesota*, 818 F.2d 664, 667 (8th Cir. 1987).

[51] ECF # 34 at 14.

[52] *Malroit*, 2000 WL 1675046, at *3-4.

diagnosis of sexual abuse . . . .  [The trial court sustained objections to Dr. Campbell's proposed testimony based on an Ohio rule of evidence that] differs from the federal rule in that the Ohio rule does not recognize a third basis for expert opinion: information supplied to the expert outside the record, if of the type reasonably relied on by experts in the particular field."[53]

In addition, the appellate court did not disturb trial court rulings that excluded proposed testimony that was "irrelevant and unresponsive to the question."[54]

Malroit argues that the trial court's rulings limiting Dr. Campbell's testimony were inherently defective under the federal constitution.  "The trial court's ruling deprived Malroit of his right to present a defense and to a fair trial because the jury was left with only one view of the facts . . . Fundamental fairness was lacking in Malroit's trial."[55]

As already discussed, this Court must evaluate any claim for habeas relief based on alleged flaws in the application of state evidentiary rules at trial by considering whether the purported error rendered the whole trial fundamentally unfair.[56] The alleged evidentiary error must be shown to have had "a substantial and injurious effect or influence" on the jury's verdict.[57] Precluding the evidence must be shown to have created a reasonable probability that the result would have been different.[58]

---

[53] *Id*. at *4.

[54] *Id.*

[55] ECF # 34 at 15, 18.

[56] *Estelle,* 502 U.S. at 67-68.

[57] *Brecht,* 507 U.S. at 623.

[58] *Dominguez Benitez*, 542 U.S. at 82.

Here, the state appeals court did not consider Malroit's claims concerning the proposed testimony of his expert according to any test substantially similar to the controlling federal law.  Therefore, this Court must decide if the appellate decision to uphold the exclusion of Dr. Campbell's testimony is contrary to the clearly established federal law cited above.  A review of the record establishes that the Ohio appellate court did act contrary to clearly established federal law.

In Malroit's case, the alleged victim himself testified and was available to be cross-examined.  The state's expert, Dr. Petrasek, was also available to be cross-examined as to alternative reasons for an adjustment disorder or issues of bias. As the appeals court noted in an earlier discussion of Malroit's argument for a psychological examination of the victim, Malroit has not shown how precluding his expert from directly raising certain points prevented those points from being raised "by other reasonable means,"[59] such as through cross-examination.

Here, as observed by Money in her brief, Malroit's expert did testify as to "the importance of recording the interviews with child witnesses . . . possible interviewer bias . . . relying on behavioral indicators will lead to false positives . . . problems with the interviews of Bryan."[60]  Moreover, as the appeals court noted, in sustaining the state's objection to testimony at trial about other factors that may cause an adjustment disorder, the trial judge stated that there were "no facts in evidence to suggest another possible source for Bryan's

---

[59] *Malroit,* 2000 WL 1675046, at *3.

[60] ECF # 34 at 28.

adjustment disorder," thus testimony about other such alternative sources "was not relevant to the case."[61]

Merely stating, as does Malroit in his brief, that "the jury should be permitted to hear both sides of the story"[62] does not answer the point of whether there was any evidence in the record to support presenting any alternative grounds. Malroit's argument that Dr. Campbell should have been allowed to testify that Bryan's adjustment disorder "could be from any number of things"[63] does not make a case that the state court erred in precluding such testimony as being unsupported by the facts in evidence.

Accordingly, the evidentiary rulings Malroit here claims as error have not been shown to have rendered the trial fundamentally unfair. This claim for habeas relief is without merit.

**4.     Ground 3(A) – The admission of expert testimony by an emergency room doctor suggesting that often where abuse is suspected, there is no physical evidence, denied Malroit due process and a fair trial.**

Malroit here contends that he was denied due process and a fair trial by the improper admission of testimony from Dr. Kennedy, an emergency room physician, who said in response to a question by the prosecutor, that "in fifty percent of sexual abuse cases where the perpetrator admits to abusing the child, there are no physical findings" of abuse.[64] Malroit asserts that since such testimony was based on statistics from cases of confessed

_____

[61] *Malroit*, 2000 WL 1675046, at *4.

[62] ECF # 34 at 18.

[63] *Id.*

[64] *Malroit,* 2000 WL 1675046, at *6.

abuse, it gave the jury the false impression that Malroit had confessed, when he had not. Further, Malroit argues that even if the jury knew that Malroit had not confessed, the jury might infer from the high percentage of abuse cases without physical findings that "there remained a significant percentage of the remaining fifty percent who were guilty even though they did not confess."[65]

The state appellate court, as with the prior claims of improperly admitted evidence, reviewed this assertion under the Ohio Rules of Evidence as applied by the trial court, which should not be reversed absent a finding of abuse.[66]  It denied Malroit's assignment of error.[67]

The test for this Court to employ in evaluating this claim has been previously stated. It is whether this testimony had a "substantial and injurious effect" on the trial.[68] Although the reviewing court employed a different standard, the record establishes that the decision to uphold the trial court's admission of this testimony was not contrary to the clearly established federal law in this regard.

Malroit's argument here is that the jury should be presumed to have improperly used Dr. Kennedy's testimony.  To support the issuance of the writ, Malroit must show that there is a "reasonable probability" that the jury did misconstrue the statement and so alter the

---

[65]  ECF # 34 at 20.

[66]  *Malroit,* 2000 WL 1675046, at *6.

[67]  *Id*. at *7.

[68]  *Brecht,* 507 U.S. at 623.

outcome of the trial.[69]  Malroit's essential argument in this regard is that the jury "obviously placed great weight in [Dr. Kennedy's opinion]" because "he was an expert who had evaluated Bryan."[70]

In fact, as the appeals court stated:

"Dr. Kennedy testified that he was a physician at the Department of Emergency Medicine at Akron Children's Hospital, where they see approximately 1,200 to 1,500 cases of sexual and physical abuse a year.  He also testified that he was the director of the sub-specialty fellowship making him responsible for the Akron Children's Hospital fellows' education including their training on sexual and physical abuse.  Dr. Kennedy has investigated allegations of abuse and neglect and has testified as an expert on medical treatment and diagnosis of abused children.  Dr. Kennedy testified that he examined Bryan the evening he was brought into the Children's Hospital Medical Center. . . .  The doctor testified that in his personal experience in greater than fifty percent of abuse cases there is an absence of physical findings where the perpetrator has admitted abuse.  The testimony was [in] reference to Dr. Kennedy's personal experience and not in reference to a learned treatise or article. . . .  [T]he evidence was relevant."[71]

It is well established that a federal habeas court does not ordinarily review state court evidentiary rulings.  "[E]rrors of state law, especially errors based on a state court's evidentiary rulings, do not, in and of themselves, violate the constitution."[72]  Only by establishing that, but for any such trial court ruling, there is a reasonable probability that the trial result would have been different would a habeas petitioner be entitled to relief.

_____

[69] *Dominguez Benitez*, 542 U.S. at 82.

[70] ECF # 34 at 21.

[71] *Malroit*, 2000 WL 1675046, at *7.

[72] *Buell v. Mitchell*, 274 F.3d 337, 357 (6th Cir. 2001) (quoting in part, *Neumann v. Jordan*, 84 F.3d 985, 988 (7th Cir. 1996)).

-18-

Here, Malroit does no more than speculate about how a jury may have misused Dr. Kennedy's testimony. Moreover, Malroit during cross-examination of Dr. Kennedy made no effort to highlight to the jury that Malroit had not confessed.

There is, therefore, no support in this record for a finding that Dr. Kennedy's testimony in this regard created a "reasonable probability that, but for [that testimony], the result of the proceeding would have been different."[73] Regardless of the fact that the trial judge had permitted the testimony, Malroit has not met his burden of showing that he was prejudiced. Therefore, this Court concludes that upholding the admission of Dr. Kennedy's testimony is not contrary to clearly established federal law.

**5.      *Ground 3(B) – Admitting testimony by the state's expert that "what this child said to me was presented in a credible way" violated a state rule of evidence and denied him his constitutional right to due process and a fundamentally fair trial.***

In ground 3(B) Malroit asserts that the trial court admitted testimony by the state's expert as to the credibility of the child victim in violation of a clear principle of state law, and that this testimony, under the clearly established federal law articulated in *Brecht v. Abrahamson*,[74] "had a substantial and injurious effect or influence in determining the jury's verdict."[75]

Money initially maintains that Malroit's failure to object at trial to the specific statement now at issue constituted a procedural default that first precluded the state appeals

---

[73] *Dominguez Benitez*, 542 U.S. at 82.

[74] *Brecht*, 507 U. S. 619.

[75] *Id.* at 637, cited at ECF # 34 at 25.

-19-

court from considering the merits of Malroit's claim and now must bar review in a federal habeas proceeding.[76] Money further argues that should this Court reach the merits of Malroit's petition in this regard, the alleged error "involves a matter uniquely within the discretion of the state trial judge that does not rise to a constitutional magnitude."[77]

The issue here was addressed by the state appellate court, which concluded that because the admission of the statement presented as error on appeal was not specifically objected to at trial, the appeals court could only consider it under a plain error analysis.[78] Applying Ohio's plain error rule whereby "Malroit bears the burden of demonstrating [that] the outcome of the trial clearly would have been different but for the error,"[79] the reviewing court cited to other grounds in the trial record that support a finding that the victim's allegations were credible.[80] In addition, the appeals court observed that the admitted testimony was distinguishable from the kind that is prohibited in state law.[81]

In considering this matter under the rubric of procedural default, the Court notes that the petitioner does not contest the plain fact that no objection was voiced at trial to the

---

[76] ECF # 34 at 8-9.

[77] *Id.* at 13.

[78] *Malroit*, 2000 WL 1675046, at *5.

[79] *Id*.

[80] *Id.* at *6.

[81] *Id.* "Dr. Petrasek's testimony was not based on his belief in Bryan's statements but rather conclusions drawn from his observations of Bryan's behavior."

statement now claimed to be prejudicial.  As the state appellate court observed, "the answer was not objected to."[82]

Rather, Malroit argues that an objection would have been an exercise in futility because, based on prior denials of his objections to evidence, "it was clear that the trial court was not going to sustain [Malroit's] objections."[83]

Malroit contends here that the prior rejections relieved him from the requirement to make a contemporaneous objection to this specific statement and thus preserved this issue for federal habeas review.[84]  Further, Malroit asserts that "[e]ven if the objection was not timely, this Court must still consider this issue under the fundamental miscarriage of justice standard."[85]

Because the state appeals court did recognize the absence of an objection at trial and yet proceeded to analyze the effect of the admitted statement on the trial, this Court will also do so, without passing on the merits of the argument for procedural default.

*Estelle v. McGuire*[86] holds that a challenge to the admission of evidence based on state law will not support the granting of habeas relief unless the admission of such evidence

---

[82] *Id.* at *5.

[83] ECF # 34 at 22.

[84] *Id.* at 23.

[85] *Id.*

[86] *Estelle,* 502 U.S. at 67-68.

rendered the trial fundamentally unfair in violation of due process.[87] As noted by the petitioner, *Brecht v. Abrahamson*[88] supplies the test in clearly established federal law for determining if the admission at trial of evidence contrary to state law violates federal Constitutional norms of due process.  *Brecht* states that the error must have resulted in "actual prejudice"[89] and have "had a substantial and injurious effect or influence in determining the jury's verdict."[90] Actual prejudice requires a showing of "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different."[91]

The *Brecht* ruling recognized that state courts, when addressing whether evidence improperly admitted under state law was prejudicial to a defendant, would apply the "harmless beyond a reasonable doubt" test enunciated in *Chapman v. California*.[92] A federal habeas court, however, should apply the "substantial and injurious effect or influence" test, which is a "less onerous harmless-error standard"[93] that is "better tailored to the nature and

---

[87] *Id*. at 67-68.

[88] *Brecht,* 507 U.S. 619.

[89] *Id*. at 637.

[90] *Id*. at 623.

[91] *Dominguez Benitez*, 542 U.S. at 82, quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). See also, discussion and comparison of *Brecht* and *Chapman* standards in *Dominguez Benitez*, 542 U.S. at 81, fn.7.

[92] *Brecht,* 507 U.S. at 630, citing and discussing *Chapman v. California*, 386 U.S. 18, 22-24 (1967).

[93] *Id.* at 623.

purpose of collateral review. . . ."[94]  As interpreted in *Dominguez Benitez*, a federal habeas court may only find error sufficient to grant the writ upon a showing that, but for the error, the result of the trial would have been different.

Here, the state appeals court applied a plain error analysis that is substantially the same as that envisaged by *Brecht* and *Dominguez Benitez*.  It  requires a showing by Malroit that the trial result "clearly would have been different but for the error."[95]

In applying that plain error standard, the state appeals court pointed to numerous examples in the record where the unchallenged testimony of the state's expert, Dr. Petrasek, gave the jury sufficient credible evidence to conclude that the victim was telling the truth about being abused by Malroit:

> "[Dr. Petrasek] testified that Bryan would squirm for three to ten minutes
> every time the topic of Bryan's butt came up in conversation.  During one
> session while discussing the blindfolding, Bryan 'put his hand behind his back
> to show me, and tried to get an apparent blindfold off his face.'  Dr. Petrasek
> characterized the squirming and the blindfold display as a spontaneous
> showing of Bryan's distress.  Bryan described the incident with language that
> matched the development level of a seven-year-old.  Dr. Petrasek also noted
> that Bryan's description seemed personal."[96]

This Court finds that the state reviewing court reasonably applied the clearly established federal law governing this matter.[97]  The single comment by Dr. Petrasek, made

---

[94] *Id*. at 637-38.

[95] *Malroit*, 2000 WL 1675046, at *5, citing *State v. Cooperrider*, 4 Ohio St. 3d 226, 227 (1983).

[96] ECF # 32 at 287.

[97] *Brecht*, 507 U.S. at 637; *Dominguez Benitez*, 542 U.S. at 82.

in the form that it was, when viewed together with the evidence concerning the victim's demeanor, cited by the appeals court, to which no objection was made, as well as the fact that the jury was able to directly assess the victim's credibility when he testified at trial, provide numerous independent grounds for a jury to believe the complaining victim.

Given the question asked of Dr. Petrasek, and the answer given, the ruling by the trial court comports with federal precedent in habeas cases that found no due process violation where a psychologist or psychiatrist testified that information gained through an examination of a child victim was consistent with sexual abuse.[98]

Accordingly, this Court must conclude that, even if the admission of a statement by the state's expert that "what this child said to me was presented in a credible way"[99] may have violated state evidentiary rules, it did not, under clearly established federal law, have a "substantial and injurious effect or influence in determining the jury's verdict"[100] by creating "a reasonable probability that, but for" the admission of this testimony, the result of this trial would have been different.[101]  Therefore, the claimed error did not constitute a denial of due process that would justify the issuance of a writ of habeas corpus.

---

[98] *E.g.*, *Parker*, 394 F. 3d at 1312.

[99] *Malroit*, 2000 WL 1675046, at *5.

[100] *Brecht*, 507 U.S. at 637.

[101] *Dominguez Benitez*, 542 U.S. at 82.

6.     *Ground four – Malroit's right under the Fifth Amendment not to be placed in double jeopardy was violated by his conviction and sentencing for both felonious sexual penetration and kidnapping*.

Malroit contends that the trial court erred "when it found that felonious sexual penetration and kidnapping were not allied offenses of similar import."  The state appellate court, citing portions of the Ohio Revised Code which effectuate the federal constitutional guarantee against double jeopardy in Ohio law, concluded that:

> "Upon abstract review of the statutory elements of the two offenses, it is clear that the commission of one does not necessarily result in the commission of the other.  Each contains one element that the other does not.  Felonious sexual penetration contains the element of inserting any part of the body instrument, apparatus, or other object into the vaginal or anal cavity of another. Kidnapping contains the elements of substantial risk of serious physical harm and restraint of another's liberty. . . . [H]aving determined that those elements do not 'correspond to such a degree that the commission of one crime will result in the commission of the other,' [citation omitted], we conclude that felonious sexual penetration and kidnapping are not allied offenses of similar import."[102]

A federal habeas court will analyze a claim based on double jeopardy by determining "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution."[103]

Here, the state reviewing court employed a substantially similar test under Ohio law. Accordingly, this Court must decide if the Ohio appellate court decision was an unreasonable application of clearly established federal law in this regard.

_____

[102] *Malroit*, 2000 WL 1675046, at *8.

[103] *United States v. Dixon*, 509 U.S. 688, 689 (1993).

-25-

As the appeals court noted, the crime of felonious sexual penetration in Ohio contains the element of "inserting any part of the body instrument, apparatus, or other object into the vaginal or anal cavity of another."  Kidnapping contains the essential elements of "substantial risk of serious physical harm and restraint of another's liberty."  That court correctly concluded that each statute contains elements not required by the other.  Therefore, no improper double jeopardy attached to Malroit by his convictions under both.   Further, the merging of the two kidnapping convictions for purposes of sentencing did not create a double jeopardy violation.

## IV.   Conclusion and Recommendation

The Magistrate Judge recommends denying the petition, in that all grounds asserted lack merit.


Dated:   November 4, 2005                          s/ William H. Baughman, Jr.
                                                                United States Magistrate Judge


### Objections


Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[104]

---

[104] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).